IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:19-CV-549-FL

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| MOUSSA TALL, a/k/a BAMOUSSA Tall, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on the plaintiff's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 (DE 17). Pro se defendant responded in opposition, and plaintiff replied. In this posture, the issues raised are ripe for ruling. For the following reasons, plaintiff's motion for summary judgment is granted.

**STATEMENT OF THE CASE**

Plaintiff commenced this action on December 3, 2019, pursuant to 8 U.S.C. § 1451(a), seeking to revoke defendant's United States citizenship, on grounds that defendant procured his naturalization illegally and by willful concealment or misrepresentation of a material fact. After filing a limited notice of appearance, defendant's prior counsel moved for an extension of time to respond to plaintiff's complaint, which was granted on February 10, 2020. Shortly thereafter, defendant's prior counsel moved to withdraw, which the court allowed on February 27, 2020, and defendant began proceeding pro se. Defendant did not answer plaintiff's complaint.

On June 22, 2020, plaintiff filed the instant motion for summary judgment, relying upon a memorandum of law, statement of material facts, and appendix of exhibits thereto, comprising the

following: 1) email correspondence between plaintiff's counsel and defendant; 2) declaration of Kathryne Gray; 3) Department of Homeland Security Fingerprint Report; 4) Form 1-589 application for asylum and for withholding of deportation ("Form I-589" or "asylum application") and record of interpreter oath in asylum interview; 5) referral notice from United States Immigration and Naturalization Service ("INS"); 6) notice to appear in removal proceedings; 7) transcript of May 28, 1997, removal hearing before an immigration judge; 8) transcript of July 16, 1997 removal hearing before an immigration judge; 9) transcript of October 22, 1997, removal hearing before an immigration judge; 10) transcript of December 3, 1997, removal hearing before an immigration judge; 11) transcript of May 11, 1998, removal hearing before an immigration judge; 12) May 11, 1998, oral decision of an immigration judge; 13) notice of appeal of immigration judge's decision to the Board of Immigration Appeals; 14) May 30, 2002, decision of the Board of Immigration Appeals; 15) March 2, 2005, warrant of removal/deportation; 16) November 5, 2010, notice to appear for removal; 17) Form 1-485, Application to Register Permanent Residence or Adjust Status ("Form 1-485" or "application to register permanent residence"); 18) defendant's birth certificate; 19) application for employment authorization; 20) Form 6-325A biographic information; 21) declaration of William H. Winfield; 22) Form I-751, Petition to Remove the Conditions on Residence ("Form I-751" or "petition to remove the conditions on residence"); 23) Form N-400, Application for Naturalization ("Form N-400" or "application for naturalization"); 24) declaration of Dana J. Lindauer; and 25) certificate of naturalization.

  On June 24, 2020, the court provided defendant notice of plaintiff's motion pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975). The notice informed defendant that he:

> must respond to the motion with affidavits (written statements signed before a notary public and under oath), declarations (written statements bearing a certificate

2

> that the statement is signed under penalty of perjury), deposition transcripts, discovery responses, sworn statements (bearing a certificate that the statement is signed under penalty of perjury), or other evidence in such a manner so as to persuade the court that a genuine issue of material fact remains to be determined, and that the case should proceed to trial or evidentiary hearing.

(Roseboro Letter (DE 21) at 1). The notice further informed defendant of the requirement for an "Opposing Statement of Facts," including the following information and warning:

> Under Local Civil Rule 56.1(a)(2), you MUST file a separate statement with numbered paragraphs responding to each paragraph in the plaintiff's statement of facts. Note that if you fail to respond to any numbered paragraph in the plaintiff's statement of facts, the facts in that paragraph will be deemed to be admitted.

(Id. at 2).

Despite receiving the foregoing notice, defendant did not file an opposing statement of facts, but rather filed a response brief on July 16, 2020, unaccompanied by any affidavit or declaration affirming its authenticity. Plaintiff replied on July 30, 2020, relying upon declaration of Ellen C. Fasano, in support.

## STATEMENT OF UNDISPUTED FACTS

A.  Bamoussa Tall

On February 27, 1997, defendant submitted an asylum application to INS, under the name "Bamoussa Tall." (Pl. Stat. (DE 19) ¶ 11). Defendant was fingerprinted in connection with his asylum application and he certified under penalty of perjury that the information stated therein was accurate. (Id. ¶¶ 12, 15). As relevant to the instant action, defendant stated in his asylum application that he was born in August 1970 in "Mauritanian (Rosso)"; his nationality was Mauritanian; he last entered the United States on September 16, 1996, in Miami; his address prior to arrival in the United States was in Senegal; his father's name was Cheikh Tall and his nationality was Mauritanian; and his mother's name was Koumoutia Makalow and her nationality was also

3

Mauritanian. (Id. ¶ 14). Defendant left blank that part of the asylum application which asked whether anyone other than defendant prepared the asylum application. (Id. ¶ 16).

On April 21, 1997, an INS asylum officer interviewed defendant under oath with assistance from a French interpreter, who defendant identified as his friend. (Id. ¶¶ 17-18). At the conclusion of the interview, defendant again signed the asylum application, affirming that he knew of the contents of his application, including any attached documents, and all information contained therein was accurate. (Id. ¶ 20). Thereafter, INS denied defendant's asylum application and referred his case to an immigration judge. (Id. ¶ 21).

After being served with a notice to appear in removal proceedings, defendant appeared in person with his attorney in immigration court for five removal hearings, where he was provided an interpreter. (Id. ¶ 25). At the conclusion of the removal proceedings, on May 11, 1998, defendant testified under oath that he was born in Rosso, Mauritania, and he submitted an affidavit dated December 2, 1997, in which he swore under penalty of perjury that he was a citizen of Mauritania and that the Mauritanian government confiscated his identity card and birth certificate. (Id. ¶¶ 27-28).

On May 11, 1998, the immigration judge denied defendant's application for asylum and ordered him removed to Mauritania with an alternative order of removal to Senegal. (Id. ¶ 29). The immigration judge warned defendant that if the Board of Immigration Appeals affirmed the immigration judge's decision, the removal order would become final and defendant would be ordered to surrender for removal. (Id. ¶ 30). The immigration judge further warned that, if defendant failed to surrender, he would be ineligible for certain forms of relief, including change of his status and adjustment of his status, "or in other words obtaining a green card in the United

4

States." (Id.). Defendant verbally acknowledged that he understood the immigration judge's admonishments. (Id. ¶ 31).

On appeal, the Board of Immigration Appeals affirmed the immigration judge's order, rendering it a final order of removal. (Id. ¶ 34). Thereafter, on March 2, 2005, a warrant of removal/deportation, was issued for defendant, and on November 5, 2010, a notice to appear for removal, was issued to defendant, requiring him to report for removal to Mauritania on December 14, 2010. (Id. ¶ 36). The notice to appear for removal, was sent by certified mail, return receipt requested, to defendant at the updated address he provided the immigration court as well as his attorney. (Id.). There is no record or other evidence that defendant reported for removal or departed the United States pursuant to the final order or removal against him. (Id. ¶¶ 37-38).

B.     Moussa Tall

On August 17, 1999, after the immigration judge ordered that defendant be removed, and while defendant's appeal before the Board of Immigration Appeals was pending, defendant submitted to the INS an application for permanent residence, using the identity "Moussa Tall." (Id. ¶ 39). A fingerprint report performed by the Department of Homeland Security confirms that the aliases Moussa Tall and Bamoussa Tall belong to the same person. (Id. ¶ 10).

In his application for permanent residence, defendant stated that he was born in February 1971 in "Bobo-Dioulasso"; his date of last of arrival in the United States was February 16, 1996; his last place of entry into the United States was in New York; his mother's name was Macalou Koumana; his father's name was Tall Sekou; he had never been deported from the United States, or removed from the United States at government expense, nor was he then in deportation proceedings; and he had not by fraud or willful misrepresentation of a material fact, ever sought to procure, or procured, a visa, other documentation, entry into the United States, or any other

5

immigration benefit.  (Id. ¶ 40).  In support of his application for permanent residence, defendant submitted a document purporting to be a birth certificate issued by the City of Bobo-Dioulasso for "Tall Moussa", born in February 1971 to father "Tall Sekou" and mother "Makalou Koumana." (Id. ¶ 42).  Defendant signed the application for permanent residence, certifying under penalty of perjury that the application, and the evidence submitted therewith, was true and correct.  (Id. ¶ 41).

On March 19, 2001, an INS officer interview defendant under oath about his eligibility for permanent residency, and defendant provided testimony confirming the information in his Form I-485.  (Id. ¶¶ 52-53).  During the interview, and in his application for permanent residence, defendant did not disclose his prior use of the identity "Bamoussa Tall" or his then-ongoing immigration history under that identity.  (Id. ¶ 56).  On April 18, 2001, the INS approved defendant's application for permanent residence, granting defendant the status of a conditional permanent resident.  (Id. ¶ 55).

On February 26, 2003, defendant submitted a petition to remove the conditions on residence, under penalty of perjury, to the INS, wherein he stated: 1) his name was Moussa Tall; 2) he was born in February 1971 in Bobo-Dioulasso, Burkina-Faso; 3) he had not used other names; 4) he was not in removal or deportation proceedings; and 4) he had not, since becoming a conditional resident, committed any crime for which he was not arrested.  (Id. ¶¶ 60-62). Defendant's petition to remove the conditions on residence was approved on June 16, 2004, and defendant was deemed to be a permanent resident on April 18, 2001.  (Id. ¶ 63).

On June 14, 2004, defendant, using the identity Moussa Tall, submitted an application for naturalization to United States Citizenship and Immigration Services ("USCIS"), wherein he stated, under penalty of perjury, that: 1) his name was Moussa Tall; 2) he had never used any other names; 3) he was born in February 1971 in Burkina-Faso, West Africa; 4) his country of nationality

6

was Mali, West Africa; 5) he had never given false or misleading information to any United States government official while applying for any immigration benefit or to prevent deportation, exclusion, or removal; 6) he had never applied for any kind of relief from removal, exclusion, or deportation. (Id. ¶¶ 67-68). Thereafter, a USCIS Immigration Services Officer interviewed defendant under oath to determine his eligibility for naturalization, and defendant provided testimony confirming the information in his Form N-400. (Id. ¶ 70-71).

On September 27, 2004, USCIS approved defendant's Form-400. (Id. ¶ 73). After defendant took the oath of allegiance on November 4, 2004, USCIS issued defendant a certificate of naturalization and defendant became a naturalized United States citizen. (Id. ¶¶ 77-78).

## COURT'S DISCUSSION

A.   Standard of Review

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

Once the moving party has met its burden, the non-moving party must then "come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986) (internal quotation omitted). Only disputes between the parties over facts that might affect the outcome of the case properly preclude entry of summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986) (holding that a factual dispute is "material" only if it might affect the outcome of the suit and

7

"genuine" only if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party).

"[A]t the summary judgment stage the [court's] function is not [itself] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. In determining whether there is a genuine issue for trial, "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [non-movant's] favor." Id. at 255; see United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) ("On summary judgment the inferences to be drawn from the underlying facts contained in [affidavits, attached exhibits, and depositions] must be viewed in the light most favorable to the party opposing the motion.").

Nevertheless, "permissible inferences must still be within the range of reasonable probability, . . . and it is the duty of the court to withdraw the case from the [factfinder] when the necessary inference is so tenuous that it rests merely upon speculation and conjecture." Lovelace v. Sherwin-Williams Co., 681 F.2d 230, 241 (4th Cir. 1982) (quotations omitted). Thus, judgment as a matter of law is warranted where "the verdict in favor of the non-moving party would necessarily be based on speculation and conjecture." Myrick v. Prime Ins. Syndicate, Inc., 395 F.3d 485, 489 (4th Cir. 2005). By contrast, when "the evidence as a whole is susceptible of more than one reasonable inference, a [triable] issue is created," and judgment as a matter of law should be denied. Id. at 489–90.

B.   Analysis

Due to the "severe and unsettling consequences" of denaturalization, the government "carries a heavy burden of proof in a proceeding to divest a naturalized citizen of his citizenship." Fedorenko v. United States, 449 U.S. 490, 505 (1981) (citing Costello v. United States, 365 U.S.

8

265, 269 (1961)). Indeed, "the evidence justifying revocation of citizenship must be 'clear, unequivocal, and convincing' and not leave 'the issue in doubt.'" Fedorenko, 449 U.S. at 505 (quoting Schneiderman v. United States, 320 U.S. 118, 125 (1943)). However, once a court determines that the government has met its high burden, the court "lack[s] equitable discretion to refrain from entering a judgment of denaturalization." Fedorenko, 449 U.S. at 517.

Under 8 U.S.C. § 1451(a), the government may file a complaint to revoke naturalization if a citizen's naturalization was 1) "illegally procured" or 2) "[was] procured by concealment of a material fact or by willful misrepresentation." Naturalization was "illegally procured" if the individual did not comply with all statutory requirements for citizenship. Fedorenko, 449 U.S. at 506. One such statutory requirement is that the applicant must have been "lawfully admitted" to the United States for permanent residence. 8 U.S.C. § 1427(a); Injeti v. U.S. Citizenship & Immigr. Servs., 737 F.3d 311, 315 (4th Cir. 2013). The term "lawfully admitted for permanent residence" "means the status of having been lawfully accorded the privilege of residing permanently in the United States as an immigrant in accordance with the immigration laws." 8 U.S.C. § 1101(a)(20). Adopting the Board of Immigration Appeals's interpretation of this definition, the United States Court of Appeals for the Fourth Circuit has held that "the term 'lawfully' 'denotes compliance with substantive legal requirements, not mere procedural regularity.'" Injeti, 737 F.3d at 315 (quoting In re Koloamatangi, 23 I. & N. Dec. 548, 550 (B.I.A. 2003). As such, being lawfully admitted for permanent residence requires more than being granted lawful permanent residence status – it requires that the "grant of that status was in substantive compliance with the immigration laws." Injeti, 737 F.3d at 316.

Seeking to revoke defendant's citizenship on grounds of illegal procurement, plaintiff argues that defendant's grant of permanent residence status was not in substantive compliance with

the immigration laws because he was inadmissible at the of the grant. It is well settled that admissibility is a prerequisite for being lawfully admitted to the United States for permanent residence. Injeti, 737 F.3d at 318 ("To be sure, Injeti would not have been entitled to adjust her status to permanent resident had she been statutorily inadmissible. Admissibility, . . . is a necessary . . . condition for adjustment to LPR status."). As such, if defendant was inadmissible at the time of his adjustment to permanent resident status, his subsequent grant of citizenship was "illegally procured."

Here, plaintiff argues defendant was inadmissible under 8 U.S.C. § 1182(a)(6)(C)(i) because he "by fraud or willfully misrepresenting a material fact . . . has sought to procure or has procured" an immigration benefit." 8 U.S.C. § 1182(a)(6)(C)(i)). "The government bears the burden of showing, by clear and convincing evidence, that the alien fraudulently or willfully misrepresented or concealed some material fact, and that such fraud or misrepresentation was used to seek a visa, documentation, or entry into this country." Xing Yang Yang v. Holder, 770 F.3d 294, 303 (4th Cir. 2014), as amended (Nov. 5, 2014).

Regarding the intent element, fraud and willful misrepresentation "constitut[e] two separate bases for inadmissibility." Id. "Fraud requires that the alien intended to deceive, while willful misrepresentation requires no such intent. Rather, a misrepresentation is willful if it was deliberate and voluntary. Knowledge of the falsity of the representation generally satisfies that standard." Id. Additionally, to satisfy the materiality element, the representation "must be of the sort that would affect the ultimate immigration decision." Id. at 305 (citing Bazzi v. Holder, 746 F.3d 640, 645–46 (6th Cir. 2013)). Finally, the representation must have been used to procure an immigration benefit. Xing Yang Yang, 770 F.3d at 303.

10

It is undisputed that defendant stated the following in his asylum application: his name is Bamoussa Tall; he was born in August 1970; his nationality is Mauritanian; he last entered the United States on September 16, 1996, in Miami; his address prior to arrival in the United States was in Senegal; his father's name was Cheikh Tall and his nationality was Mauritanian; and his mother's name was Koumoutia Makalow and her nationality was also Mauritanian. (Pl. Stat. (DE 19) ¶ 14). Yet, in his application for permanent residence, defendant provided markedly different answers, stating that his name was Moussa Tall; he was born in February 1971 in "Bobo-Dioulasso"; his date of last of arrival in the United States was February 16, 1996; his last place of entry into the United States was in New York; his mother's name was Macalou Koumana; and his father's name was Tall Sekou. (Id. ¶¶ 39, 40).[1] Moreover, although an immigration judge ordered defendant removed from the United States in 1998, defendant stated in his application for permanent residence in 1999 that he had never been deported from the United States, or removed from the United States at government expense, nor was he then in deportation proceedings. (Id. ¶¶ 30, 40).

Plaintiff has presented clear and convincing evidence that the foregoing misrepresentations were willful. Indeed, defendant could not have been born in two different places, at two different times, to two different sets of parents, and it cannot be reasonably inferred that defendant lacked knowledge of the falsity of those inconsistent representations. Likewise, where defendant appeared in person for an interview pertaining to his asylum application, and subsequently appeared in person for five different hearings before an immigration judge, who ultimately ordered him removed in 1998, it is beyond the range of reasonableness to infer that defendant did not know the falsity of his representation the following year that he had never been deported from the United

---

[1] Defendant also provided these answers when applying for employment authorization. (See Pl. Stmt. (DE 19) ¶¶ 43-45).

States, or removed from the United States at government expense, nor was he then in deportation proceedings.

In his response brief, defendant claims that he paid someone named Toure $3,000 to obtain a working permit for him in 1996. (Resp. (DE 22) at 2). According to defendant, he did not know that Toure filled out application for asylum instead of a working permit. (Id.). Moreover, defendant claims that he did not realize that his name and his mother's names were incorrect on the application when he signed it. (Id.). He states that he did not speak English, and he only answered the French interpreter's questions at the hearings. (Id.). Finally, he states Toure's address, rather than his address, was listed on the application, Toure kept all of documents, and he did not know that he needed to disclose "what happened in New York" because he had no documents from the incident. (Id. at 2-3).

Defendant fails to raise a genuine dispute of material fact as to the willfulness of the foregoing misrepresentations. As an initial matter, Rule 56 requires parties to support their factual positions by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A); see Bouchat v. Baltimore Ravens Football Club, Inc., 346 F.3d 514, 522 (4th Cir. 2003) (explaining that a party opposing summary judgment must submit "verified evidence" to establish triable issue of fact). Defendant's unverified response brief does not satisfy this requirement. Moreover, even assuming defendant's claims are true, and someone named Toure provided the misrepresentations in defendant's asylum application, defendant confirmed that the information was correct during a subsequent in person interview with an asylum officer. (Record of Interpreter's Oath (DE 20-4) at 1-12); (Fasano Declaration (DE 23-1) ¶¶ 3-8). An interpreter, who defendant claimed was his

friend, was present for the interview, and the interview was conducted in French, a language defendant claimed to speak fluently. (Id.); (Pl. St. (DE 19) ¶ 18). At the conclusion of the interview, defendant again signed the asylum application under penalty of perjury, swearing that its contents were correct. (Record of Interpreter's Oath (DE 20-4) at 9). Therefore, regardless of who initially filled out the asylum application, there is no dispute that defendant willfully misrepresented information during his interview and subsequent affirmance of the asylum application. C.f. Injeti, 737 F.3d at 318 (holding that because the applicant certified all information in her application was "true and correct", as required by 8 C.F.R. § 103.2(a)(2), and her application contained a material misrepresentation, the applicant was not lawfully admitted for permanent residence "regardless of whether the misrepresentation on her application was willful"); see also United States v. Hirani, 824 F.3d 741, 748 (8th Cir. 2016) ("Although Appellant testified that he cannot identify who prepared the application for him . . . Appellant admits he signed the Form N–400, certifying its contents were correct. That certification is sufficient to show, clearly, unequivocally, and convincingly, that Appellant made the misrepresentations.").

Moreover, during removal proceedings, defendant testified under oath that his name was Bamoussa Tall, he was born in Rosso, Mauritania, and he provided detailed testimony on why he was seeking asylum. (Transcript of May 28, 1997, Hearing (DE 20-7) at 4-5); (Transcript of May 11, 1998, Hearing (DE 20-11) at 9-24). Defendant's attorney, who was present at removal proceedings, testified under oath that he explained the nature of the removal proceedings to defendant. (Transcript of May 28, 1997, Hearing (DE 20-7) at 5). When the immigration judge ordered defendant removed, he warned defendant that if his removal decision becomes final, and defendant fails to surrender, defendant would be ineligible for "obtaining a greed card in the United States." (Transcript of May 11, 1998, Hearing (DE 20-11) at 50). After receiving the immigration

13

judge's warning, defendant orally testified that he understood. (Id.). As such, there is no dispute that defendant knew of the falsity of his representation that he had not been removed or was not then involved in removal proceedings, regardless of whether Toure withheld defendant's documentation, as defendant claims. In sum, plaintiff has provided clear and convincing evidence that defendant's misrepresentations were willful.

Turning to the materiality element, defendant's misrepresentations in his asylum application about his birthdate, name, nationality, parents, country of origin, and place of entry into the United States are of the sort that would affect the ultimate asylum determination; likewise, his misrepresentations about the removal order against him are of the sort that would affect whether he could become a lawful permanent resident. As such, defendant's misrepresentations are material. Xing Yang Yang, 770 F.3d at 305 (defining material misrepresentations as being of "the sort that would affect the ultimate immigration decision."); see also Hirani, 824 F.3d at 749 ("Appellant's legal name Rakeshkumar Patel, his true date of birth, and his deportation history are material facts."); Koszelnik v. Sec'y of Dep't of Homeland Sec., 828 F.3d 175, 180 (3d Cir. 2016) (Koszelnik . . . failed to disclose the order of deportation that was pending against him. It is undisputed that if the INS had been aware of the deportation order pending against Koszelnik, he would not have been granted lawful permanent resident status.").

Finally, where the misrepresentations were made in an asylum application, during removal proceedings, in an application for permanent residence status, plaintiff has provided clear and convincing evidence that defendant sought to procure, or procured immigration benefits, such as asylum and permanent residence status, through those misrepresentations.

In sum, plaintiff has provided clear and convincing evidence that, at the time defendant was granted permanent residence status, defendant was inadmissible under 8 U.S.C. §

1182(a)(6)(C)(i) because he willfully misrepresented material facts while seeking to procure immigration benefits. Therefore, defendant's grant of permanent residence status was not in substantive compliance with immigration laws, and he was not "lawfully admitted" to permanent resident status. Accordingly, defendant's naturalization was illegally procured, and the court must enter a judgment of denaturalization against defendant. Fedorenko, 449 U.S. 490, 517 ("District courts lack equitable discretion to refrain from entering a judgment of denaturalization against a naturalized citizen whose citizenship was procured illegally.").

Defendant argues, however, that he should be protected under the statute of limitations because he has no criminal record and he has resided in the United States for more than 20 years. As an initial matter, 8 U.S.C. § 1451, which governs denaturalization proceedings, does not contain a statute of limitations. Moreover, although the Fourth Circuit has not addressed this issue, the Supreme Court and several circuits have allowed the government to bring denaturalization proceedings "long after the time when the certificate of citizenship was granted" even if "the citizen has meanwhile met his obligations and has committed no act of lawlessness." Schneiderman, 320 U.S. at 122-23 (proceedings commenced 12 years after naturalization); see also, Kungys v. United States, 485 U.S. 759, 764 (1988) (proceedings commenced 28 years after naturalization); Costello, 365 U.S. at 281 (declining to apply the doctrine of laches to a denaturalization action filed 27 years after naturalization); United States v. Demjanjuk, 367 F.3d 623, 627 (6th Cir. 2004) (proceedings commenced 41 years after naturalization); United States v. Szehinskyj, 277 F.3d 331, 333 (3d Cir. 2002) (proceedings commenced 41 years after naturalization); United States v. Sokolov, 814 F.2d 864, 870 (2d Cir. 1987) (proceedings commenced 25 years after naturalization).

15

Although defendant does not reference or rely upon 28 U.S.C. § 2464 to assert his statute of limitations defense, courts have held routinely that 28 U.S.C. § 2462, which provides a five-year statute of limitations "for the enforcement of any civil fine, penalty or forfeiture", does not apply to denaturalization proceedings because denaturalization is not a penalty. See e.g., United States v. Phattey, 943 F.3d 1277, 1283 (9th Cir. 2019) ("Because denaturalization proceedings do not constitute a penalty for purposes of 28 U.S.C. § 2462, that statute does not provide Phattey a statute-of-limitations defense."); United States v. Dhanoa, 402 F. Supp. 3d 296, 301 (D.S.C. 2019) ("In the absence of a more forthright directive from either the Supreme Court or Congress, the court declines to apply the five-year statute of limitations in § 2642 to denaturalization actions brought under § 1451(a)."); United States v. Hongyan Li, 619 Fed. App'x. 298, 303 (5th Cir. 2015) ("Because the denaturalization action is not punitive, the limitations period in § 2462 is inapplicable to [defendant's] case."); United States v. Rebelo, 394 Fed. App'x. 850, 853 (3d Cir. 2010) ("The catch-all statute of limitations of 28 U.S.C. § 2462—like its predecessor—does not apply to denaturalization proceedings brought pursuant to 8 U.S.C. § 1451(a)"). As such, the court finds that no statute of limitations applies to this action.

Finally, plaintiff raises several additional grounds in support of defendant's denaturalization. However, where the court finds that defendant was not lawfully admitted for permanent residence, and where failure to comply with any one of the statutory requirements compels denaturalization, see Fedorenko, 449 U.S. at 506-517, the court need not reach plaintiff's remaining arguments for denaturalization. See Injeti, 737 F.3d at 318 ("In addition to finding that Injeti had not been lawfully admitted for permanent residence, the district court also held that Injeti's 'unlawful acts' 'bar[red] a finding of good moral character.' However, because a failure to satisfy any one of the statutory prerequisites renders an applicant ineligible for naturalization, this

16

latter conclusion was not essential to the district court's grant of summary judgment."); see also (Pl. Mem. (DE 18) at 8, n.1) ("Although Plaintiff maintains the correctness of and intends to pursue all counts in its Complaint, it is filing this motion on these four independent grounds (Counts I, II, IV, and V) based on indisputable evidence attached in support, which render unnecessary further proceedings on the remaining count because Plaintiff is entitled to judgment as a matter of law on any one of these grounds. If the Court grants summary judgment in favor of Plaintiff on any one of these counts, Plaintiff will receive all the relief requested in the complaint.").

## CONCLUSION

Based on the foregoing, plaintiff's motion for summary judgment (DE 17) is GRANTED. The clerk is DIRECTED to close this case.

SO ORDERED, this the 18th day of February, 2021.

_____
LOUISE W. FLANAGAN
United States District Judge